# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

MARIE ANITA NICHOLSON,     )
                                          )

     **Plaintiff,**           )
                                            )

**v.**                             )    **CIVIL ACTION 07-0496-WS-M**
                                          )

**CITY OF DAPHNE, et al.,**     )
                                          )

     **Defendants.**         )

## ORDER

This matter is before the Court on two motions for summary judgment filed by the defendants.  (Docs. 97, 101).  The defendants have submitted briefs and evidentiary materials in support of their positions, (Docs. 98-100, 102-04), the plaintiff declined the opportunity to file a response,[1] and the motions are ripe for resolution.  After carefully considering the foregoing materials, the Court concludes that the motions are due to be granted in part and denied in part.

## BACKGROUND

The plaintiff is employed by the defendant City of Daphne ("the City").  In addition to the City, the defendants include: (1) Fred Small, the City's mayor; (2) Regina

---

[1]The motions were filed in December 2008, and the plaintiff was given the usual 28 days to respond.  (Doc. 106).  She requested and received a 30-day extension due to counsel's health issues.  (Docs. 107, 108).  In late February, eight days after the amended deadline expired, the plaintiff requested another extension, again due to health issues.  (Doc. 111).  The Court on March 2 granted an extension to April 2, which required pushing back the pretrial conference by three months.  (Doc. 115).  Also on March 2, additional plaintiff's counsel filed a notice of appearance.  (Doc. 114).  Nevertheless, the plaintiff filed no response.  Instead, 13 days after the second amended deadline expired, the plaintiff requested a third extension.  (Doc. 117).  On April 16, the Court granted an extension to April 29.  (Doc. 118).  The plaintiff has filed nothing further.

Landry, a member of the city council; (3) Sharon Cureton, the City's human resources director; (4) David Carpenter, the City's police chief; (5) David McKelroy, director of the City's recreation department; (6) Mary Jensen, coordinator of senior activities within the recreation department; (7) Debbie White, administrative assistant within the recreation department; (8) Daniel Bell, a lieutenant with the City's police department; and (9) Scott Taylor, a captain in the police department.[2]

The plaintiff worked for a number of years in the City's recreation department, lastly as coordinator of community activities.  She alleges that she had various problems working with McKelroy, Jensen and White in that department over a period of years.  In late September 2005, she received from McKelroy what she perceived as a negative evaluation, which she protested.  Over the next few days, the plaintiff: (a) began cleaning out her office; (b) took out a life insurance policy; (c) confirmed with the City that her mother would receive her benefits if she died; (d) and informed the former mayor that she had written her obituary and was getting all her affairs in order.  (Doc. 99, Exhibit 10 at 59-61; *id*., Exhibit 11 at 60, 76).

The plaintiff then telephoned Landry, while feeling defeated and appearing obviously stressed.  She told Landry most of what is related in the preceding paragraph and  made the following additional statements, among others: (a) that she felt like a dog that had been beaten too much and then placed in a pot of boiling water; (b) that the pressure was just too much; (c) that when a problem steeps for years, it blows up and people go in to work and kill their co-workers; (d) that she did not want to kill anyone, she just wanted to do her job and be left alone; and (e) that if the City did not get rid of the problem, she would have to do it.  (Doc. 99, Exhibit 10 at 64-66, 131; *id*., Exhibit 11

---

[2]Defendant Greg Burnam, another member of the city council, was dismissed on stipulation of the parties.  (Doc. 93).

at 79, 83).[3]

Landry interpreted the plaintiff's remarks and demeanor as indicating suicidal and homicidal tendencies and reported it.[4]  At Mayor Small's request, Chief Carpenter directed Lieutenant Bell to interview the plaintiff, which he did in a squad car from which the plaintiff did not feel free to leave.  Bell concluded the plaintiff had made the comments attributed to her by Landry.  Based on this report, McKelroy recommended that the plaintiff be terminated.  After a hearing, Mayor Small terminated the plaintiff on October 5, 2005.  She appealed to the city council, which on October 24 overturned the termination and suspended the plaintiff for 120 days without pay, with reinstatement contingent on a psychological evaluation, which the plaintiff took and passed.  In March 2006, the plaintiff was reinstated to a position within the police department, where she remains, with Taylor as her second-line supervisor.

A plaintiff is required to file a complaint that contains "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  Moreover, "[i]f doing so would promote clarity, each claim founded on a separate transaction or occurrence ... must be stated in a separate count ...." *Id*. 10(b).  The second amended complaint, under which the case is now traveling, is about as far removed from these standards as a pleading may stray.  It encompasses 134 numbered paragraphs spanning 46 pages, including over 30 pages devoted to "Title VII violations."  Buried within are references to race, sex, hostile work environment, retaliation and conspiracy, and to various constitutional and statutory provisions in addition to Title VII,  with no effort to identify which of the 97 paragraphs address which claims.  Later counts

---

[3]This is the plaintiff's version of her actions and comments.  The testimony of Landry and others is even more stark.

[4]The plaintiff denies any such inclination but concedes that reasonable people could interpret her comments and actions that way.  (Doc. 99, Exhibit 10 at 108-09; *id*., Exhibit 11 at 77).

indiscriminately incorporate by reference all preceding ones, relevant or not.  The document, in short, is a clear example of a "shotgun pleading" long condemned by the Eleventh Circuit.  *E.g., Davis v. Coca-Cola Bottling Co.*, 516 F.3d 955, 979-80 & n.57 (11th Cir. 2008) (a complaint alleging numerous forms of Title VII violations against multiple plaintiffs in a single count violated Rules 8(a) and 10(b) and constituted a shotgun pleading); *Wagner v. First Horizon Pharmaceutical Corp.*, 464 F.3d 1273, 1279 (11th Cir. 2006) (a complaint "incorporat[ing] every antecedent allegation by reference into each subsequent claim for relief " is a shotgun pleading).

The defendants' recourse was to file a motion for more definite statement.  *Davis*, 516 F.3d at 983.  They did so, but only for the limited purpose of removing an apparently accidental reference to RICO.  (Docs. 5, 12).  As will be seen below, the defendants' failure to seek clarification of the complaint has hampered their effort to obtain summary judgment.[5]

The Court identifies the claims and defendants as follows:

| Claim | Defendant(s) |
|---|---|
| • Title VII - race discrimination | All but Taylor |
| • Title VII - sex discrimination | All but Taylor |
| • Title VII - hostile work environment - race | All but Taylor |
| • Title VII - hostile work environment - sex | All but Taylor |
| • Title VII - retaliation | All but Taylor |
| • Section 1983 - Fifth/Fourteenth Amendment<br>      - equal protection | All but Taylor |
| • Section 1983 - Fifth/Fourteenth Amendment | |

---

[5]If a defendant facing a shotgun pleading fails to move for a more definite statement, the court should intervene sua sponte.  *Byrne v. Nezhat*, 261 F.3d 1075, 1133 (11th Cir. 2001).  However, by the time the case was transferred to the undersigned, discovery had ended and the time for filing dispositive motions expired (though both were extended by the Magistrate Judge), so the problem went uncorrected by the Court.

| | | |
|---|---|---|
| | - due process | All but Taylor |
| • | Section 1983 - First Amendment | All but Taylor |
| • | Section 1985(2) and (3) | All but Taylor |
| • | Section 1986 | All but Taylor |
| • | Outrageous conduct | City |
| • | Negligent management | City[6] |
| • | Title VII - retaliation | City and Taylor[7] |

## CONCLUSIONS OF LAW

The Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331, 1343(a) and 1367 and 42 U.S.C. § 2000e-5(f)(3).  Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) and 42 U.S.C. § 2000e-5(f)(3).

Although the plaintiff has filed no opposition to the defendants' motions, "the district court cannot base the entry of summary judgment on the mere fact that the motion was unopposed, but, rather, must consider the merits of the motion."  *United States v. One Piece of Real Property*, 363 F.3d 1099, 1101 (11th Cir. 2004).  "The district court need not

---

[6]The tort claims are expressly directed to a single defendant, and both refer to the conduct of the defendant and "its managers, supervisors, employees and agents."  (Doc. 39 at 39).  Only the City is an "it," and only the City has managers, supervisors, employees or agents.

[7]The plaintiff also references the Ku Klux Klan Act of 1871 ("the Act"), (Doc. 39, ¶ 3), but this allegation implicates no statutes she has not otherwise invoked.  *See District of Columbia v. Carter*, 409 U.S. 418, 423 (1973) (Section 1983 "has its roots" in the Act); *McAndrew v. Lockheed Martin Corp.*, 206 F.3d 1031, 1041 (11th Cir. 2000) (Section 1985 "derives from" the Act).

The defendants express concern about a possible claim under 42 U.S.C. § 1095(3). (Doc. 98 at 14 n.3).  There appears to be no such statute, and the second amended complaint's reference to it is an evident typographical error where Section 1985(3) was intended, (Doc. 39, ¶ 17), as that statute appears in place of Section 1095(3) elsewhere in the pleading.  (*Id.*, ¶ 3).

sua sponte review all of the evidentiary materials on file at the time the motion is granted, but ... must review all of the evidentiary materials submitted in support of the motion for summary judgment." *Id*. at 1101-02.

Summary judgment should be granted only if "there is no issue as to any material fact and the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The party seeking summary judgment bears "the initial burden to show the district court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial." *Clark v. Coats & Clark, Inc.,* 929 F.2d 604, 608 (11th Cir. 1991).

"If the party moving for summary judgment fails to discharge the initial burden, then the motion must be denied and the court need not consider what, if any, showing the non-movant has made. [citation omitted] If, however, the movant carries the initial summary judgment burden ..., the responsibility then devolves upon the non-movant to show the existence of a genuine issue of material fact." *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1116 (11th Cir. 1993). "If the nonmoving party fails to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof, the moving party is entitled to summary judgment." *Clark*, 929 F.2d at 608 (internal quotes omitted).

As noted, the second amended complaint contains well over 100 paragraphs of factual allegations, many rather detailed. If the defendants bear their initial burden, however, this material cannot be considered in deciding if the plaintiff has met her responsive burden. "When a motion for summary judgment is properly made and supported, an opposing party may not rely merely on allegations or denials in its own pleading." Fed. R. Civ. P. 56(e)(2). This rule "permits a proper summary judgment motion to be opposed by any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings themselves." *Celotex Corp. v. Catrett,* 477 U.S. 317, 324 (1986). Beyond identifying the claims asserted and the parties sued, the complaint has

little significance to the instant motions.

On the other hand, the plaintiff was questioned extensively in her deposition concerning her claims against each defendant and the evidence she has to support them. (Doc. 99, Exhibit 1).  The deposition excerpts introduced by the defendants represent the only evidence in support of the plaintiff's claims available to be considered by the Court.

"There is no burden upon the district court to distill every potential argument that could be made based upon the materials before it on summary judgment."  *Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995).  Accordingly, the Court will not construct arguments on behalf of the plaintiff, who elected to present none of her own.  Nor will the Court advance arguments on behalf of the defendants, who have ignored several of the claims asserted against them.

## I.  Title VII - Race Discrimination.

The second amended complaint alleges that the defendants discriminated against the plaintiff because she is black.  (Doc. 39, ¶ 17).

### A.  Individual Defendants.

"[W]e now expressly hold that relief under Title VII is available against only the employer and not against individual employees whose actions would constitute a violation of the Act, regardless of whether the employer is a public company or a private company."  *Dearth v. Collins*, 441 F.3d 931, 933 (11th Cir. 2006) (emphasis omitted).  This holding eliminates any Title VII claim of any stripe against all defendants other than the City.

### B.  Adverse Employment Action.

Title VII protects only against discrimination with respect to "compensation, terms, conditions or privileges of employment," 42 U.S.C. § 2000e-2(a)(1), what the

courts call an "adverse employment action."  The legal threshold of an actionable adverse employment action is "a *serious and material* change in the terms, conditions, or privileges of employment," as "viewed by a reasonable person in the circumstances." *Davis v. Town of Lake Park*, 245 F.3d 1232, 1239 (11th Cir. 2001) (emphasis in original).

The plaintiff first complains that McKelroy gave her what she considered a negative evaluation in September 2005.  (Doc. 39, ¶¶ 82, 84).  An evaluation that causes only loss of prestige or self-esteem will rarely if ever constitute an adverse employment action, *Davis*, 245 F.3d at 1241-43, and the plaintiff has identified no evidence that McKelroy's evaluation caused more significant injury or that it nevertheless can rise to the level of an adverse employment action.[8]

The plaintiff next complains that she was terminated by Mayor Small in October 2005.  (Doc. 39, ¶¶ 18, 21). This conduct is definitely an adverse employment action. *E.g., Baldwin v. Blue Cross/Blue Shield*, 480 F.3d 1287, 1300 (11th Cir. 2007) (termination is actionable because it alters the terms and conditions of employment).

The plaintiff next complains that, on her appeal of Mayor Small's decision, the city council in October 2005 overturned her termination and instead suspended her without pay for 120 days and required a psychological evaluation in order to return to work.  (Doc. 39, ¶¶ 31, 108, 110-11).  A suspension without pay constitutes an adverse employment action.  *E.g., Gillis v. Georgia Department of Corrections*, 400 F.3d 883, 887 (11th Cir. 2005) ("[A]ctions that affect compensation are considered adverse employment actions.").  A psychological evaluation, however, does not automatically constitute an adverse employment action; whether it does so depends on whether it affects an important condition of employment.  *Stavropoulos v. Firestone*, 361 F.3d 610, 621 (11th Cir. 2004) (First Amendment retaliation case).  This standard is not met when the

---

[8]An evaluation that subjects an employee to a lower or denied pay raise constitutes an adverse employment action, *Crawford v. Carroll*, 529 F.3d 961, 971-72 (11th Cir. 2008), but there is no allegation or evidence that McKelroy's evaluation had any such effect on the plaintiff.

evaluation "was designed to gather facts to form the basis of an employment decision." *Benningfield v. City of Houston*, 157 F.3d 369, 376 (5ᵗʰ Cir. 1998).[9]  The only evidence before the Court is that the psychological testing was required in order to evaluate whether the plaintiff should return to work, (Doc. 99, Exhibit 20 at 17-18), so it does not constitute an adverse employment action.

The plaintiff notes that she was reinstated in March 2006.  (Doc. 39, ¶ 108).  The plaintiff describes her placement within the police department as a demotion, (*id.*), but she has identified no evidence that this is so, and the uncontroverted evidence is that her pay and benefits remain the same as before.  (Doc. 99, Exhibit 6 at 119-20).  While a compensation-neutral transfer can be an adverse employment action "if it involves a reduction in ... prestige or responsibility," *Hinson v. Clinch County*, 231 F.3d 821, 829 (11ᵗʰ Cir. 2000), the plaintiff has not suggested that these circumstances exist here.

Beyond these discrete events, the plaintiff attacks only her general treatment by various defendants.  A hostile work environment can alter the terms and conditions of employment and thus be actionable.  *E.g., Baldwin*, 480 F.3d at 1300.  To the extent the plaintiff's complaints are relevant to a hostile work environment, they can and will be considered, as discussed in Part III.  However, to the extent they are not relevant to a hostile work environment, they cannot constitute an adverse employment action.  *E.g., id.* (only a tangible employment action or a hostile work environment alters the terms and conditions of employment).

In summary, the plaintiff has alleged only the following that constitute actionable adverse employment actions: (1) termination; and (2) suspension without pay.[10]

───────────────────────

[9]*Benningfield* was cited by *Breaux v. City of Garland*, 205 F.3d 150, 157-58 (5ᵗʰ Cir. 2000), for the proposition that requiring a psychological evaluation is not, without more, an adverse employment action.  *Breaux*, in turn, was cited for this proposition by *Stavropoulos*.

[10]The defendants argue that these claims are barred because the plaintiff did not file a charge of discrimination within 180 days of October 24, 2005.  (Doc. 98 at 16).  *See*

### C. Comparator.

Because the plaintiff is not relying on direct evidence of discrimination, she must first establish a prima facie case of disparate treatment. This requires her to show, inter alia, that a similarly situated employee of another race was treated more favorably. *E.g., Wilson v. B/E Aerospace, Inc.*, 376 F.3d 1079, 1091 (11th Cir. 2004). When the adverse employment action results from discipline (as appears to be the case here), both the quality and the quantity of the comparator's misconduct must be "nearly identical" to that of the plaintiff. *E.g., Burke-Fowler v. Orange County*, 447 F.3d 1319, 1323 (11th Cir. 2006).

The plaintiff has not identified a comparator, much less any evidence concerning one. Nor has she requested the Court to utilize some alternative version of the prima facie case. The Court therefore must conclude as a matter of law that the plaintiff cannot satisfy her prima facie case.[11]

### II. Title VII - Sex Discrimination.

The second amended complaint alleges that the defendants discriminated against the plaintiff because she is female. (Doc. 39, ¶ 17). This sex discrimination claim fails for each of the reasons set forth in Part I concerning her race discrimination claim.

---

42 U.S.C. § 2000e-5(e)(1) ("A charge under this section shall be filed within one hundred and eighty days after the alleged unlawful employment practice occurred ...."); *Wilson v. Bailey*, 934 F.2d 301, 304 n.1 (11th Cir. 1991) ("Failure to file a timely complaint with the EEOC mandates the dismissal of the Title VII suit."). This argument is based on the assumption that the charge was filed June 20, 2006. Although there is a charge bearing this date, (Doc. 99, Exhibit 26 at 6), it cannot be the earliest filed charge, since the EEOC issued a notice of charge on June 1, 2006. (*Id.* at 2). Because the defendants have not established the date of the earlier charge, they cannot obtain summary judgment on this ground.

[11]This conclusion holds not only with respect to the plaintiff's termination and suspension (the only adverse employment actions alleged) but with respect to all other aspects of her employment to which she objects.

-10-

### III.  Title VII - Hostile Work Environment - Race.

The second amended complaint alleges the existence of a racially hostile work environment.  (Doc. 39, ¶¶ 4, 28, 29).  The fourth element of such a claim is that "the harassment was sufficiently severe or pervasive to alter the terms and conditions of employment and create a discriminatorily abusive working environment."  *Hulsey v. Pride Restaurants, LLC*, 367 F.3d 1238, 1244 (11th Cir. 2004).  Not every unpleasantness experienced in the workplace goes into this calculation.  Importantly, "the statements and conduct must be of a [raci]al or [race]-related nature ... before they are considered in determining whether the severe or pervasive requirement is met."  *Gupta v. Florida Board of Regents*, 212 F.3d 571, 583 (11th Cir. 2000).  Thus, "[i]nnocuous statements or conduct, or boorish ones that do not relate to the [race] of the actor or of the offended party (the plaintiff), are not counted" in determining the severity and pervasiveness of the harassment.  *Id.*; *accord Robinson v. LaFarge North America,* Inc., 240 Fed. Appx. 824, 829 (11th Cir. 2007) (applying *Gupta* in a racial harassment context); *Washington v. Kroger Co.*, 218 Fed. Appx. 822, 825 (11th Cir. 2007) (same).[12]

Likewise, a hostile work environment arises only if "'the workplace is permeated with discriminatory intimidation, ridicule, and insult,'" *Rojas v. Florida*, 285 F.3d 1339, 1344 (11th Cir. 2002) (quoting *Harris v. Forklift Systems, Inc*., 510 U.S. 17, 21 (1993)), not simply with any kind of differential treatment.  Thus, for example, allegations of harsher discipline against blacks, of retaliation for complaining of discrimination, and of failure to investigate complaints of discrimination, "cannot be brought under a hostile work environment claim."  *McCann v. Tillman*, 526 F.3d 1370, 1378-79 (11th Cir. 2008).

These principles render irrelevant to the plaintiff's racial harassment claim most of

---

[12]On this basis, the *Washington* Court held that a co-worker's threatening to have sex with the plaintiff's wife; calling him "motherfucker"; verbally abusing him by telling him he was "nothing"; telling him he would chop him up in the meat grinder; pointing a knife at him; and threatening to take his coat, were properly ignored by the trial court because they were "devoid of any racial content."  *Id*. at 823, 825.

the mistreatment alleged in her deposition excerpts.  All that remains, even with a generous construction of what constitutes racial content, is the following:

- McKelroy once told the plaintiff she must not have stopped by the "little green drugstore."

- The plaintiff once overheard McKelroy say to White, "Don't worry, I'm gonna take care of that little smart ass nigger, you have to be patient."

- The plaintiff once overheard McKelroy say to Mayor Small, "We should have never let them get no education, now we can't do nothing with them, can't tell them nothing."

- Jensen once told the plaintiff, "When Mayor Brown leaves office, all of his people are going to be gotten rid of, you can count on that."

- The plaintiff once overheard Jensen tell White that she "hated that black bitch."

(Doc. 39, Exhibit 1 at 62, 66, 71, 98, 111).[13]

"[In] [d]etermining whether the harassment was sufficiently severe or pervasive ..., a court looks to all the circumstances, including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance."  *McCann*, 526 F.3d at 1378 (internal quotes omitted).  The plaintiff does not fare well under this analysis.

With respect to frequency, the plaintiff identifies five statements that she heard one time each, over a period of about five years.  This ranks very low on the frequency scale. *Compare McCann*, 526 F.3d at 1378-79 (four usages of racial terms in a period of over

---

[13]On an indefinite but multiple number of occasions, Jensen voiced her opinions about blacks, saying "The blacks think this, the blacks think that."  (*Id*. at 96).  The plaintiff does not assert that these comments were harassing, only that they were "distracting," along with Jensen's gum-popping.  (*Id*.).  The Court therefore will not consider these comments in its analysis.

two years were "too sporadic and isolated" to support a racial harassment claim) *and Mendoza v. Borden, Inc*., 195 F.3d 1238, 1249 (11th Cir. 1999) (en banc) (five inappropriate instances in eleven months were "far too infrequent" to support a sexual harassment claim) *with Johnson v. Booker T. Washington Broadcasting Service, Inc.*, 234 F.3d 501, 509 (11th Cir. 2000) (fifteen instances in four months "was not infrequent"). The infrequency of the challenged comments weighs against the plaintiff.

 With respect to severity, three of the five comments have no overt racial content, which must be supplied by a generous dose of supposition. The "little green drugstore" purportedly refers to the plaintiff's next-door neighbor, whose grandson reportedly sold crack there. The plaintiff assumes McKelroy was suggesting the plaintiff did or might use crack, (Doc. 39, Exhibit 1 at 62-63), and apparently further assumes that a comment about crack is a comment about blacks. The "education" comment apparently referred to the plaintiff, since McKelroy made it while the plaintiff had left the room during a discussion about the relative importance of the community activities division, (*id*. at 71), but the "them" could refer to those of a particular age, religion, sex, neighborhood, or any number of things other than race. The plaintiff assumes that the "his people" comment refers to blacks because blacks helped elect Mayor Brown, (*id*. at 97), but it could also refer to any City employee, of any race, hired by him (including Jensen).

 Even granting the plaintiff her strained construction of the comments, they do not advance her case. Suggestions that blacks use crack, that educated blacks are difficult to deal with, and that black employees would not survive a change in administration, fall toward the low end of the severity scale. *See Njie v. Regions Bank*, 198 Fed. Appx. 878, 883 (11th Cir. 2006) (racial slurs employing the terms "token" and "quota" were "not ... severe enough to constitute a hostile work environment"). Being called a "black bitch" might rank somewhat higher, except that the plaintiff's testimony makes clear that Jensen's emphasis was not on "black" but on "bitch" — in fact, Jensen used that term interchangeably with her "black bitch" comment while expressing her irritation that the

plaintiff thought she was better than Jensen and her frustration that the plaintiff's employment prevented her from "moving up." (Doc. 39, Exhibit 1 at 111).

That leaves McKelroy's use of the "N" word. The term is a racial epithet,[14] and it may be considered severe.[15] However, "mere utterance of [a] ... racial epithet" does not support a hostile environment claim,[16] at least when the statement is, as here, isolated.[17]

With respect to the third factor, the language used, under the circumstances involved, is considered more offensive than humiliating. *E.g., McCann*, 526 F.3d at 1378-79 (calling the plaintiff a "girl," calling black male employees "boy," and calling a female employee a "nigger bitch," were "offensive"); *Harrington v. Disney Regional Entertainment, Inc*., 276 Fed. Appx. 863, 876-77 (11th Cir. 2007) (being called "ghetto" and overhearing other employees being described as monkeys and "a lazy nigger" were offensive remarks); *cf. Miller v. Kenworth, Inc.*, 277 F.3d 1269, 1276-77 (11th Cir. 2002) (hurling ethnic slurs at the plaintiff multiple times a day, while shouting at him, berating him, arguing with him, and taunting him, in the presence of other employees, rose to the level of humiliating). The only express references to the plaintiff's race were not directed to her but overheard by her and occurred only twice, so none of the *Miller* circumstances that might elevate the comments from the offensive to the humiliating are present.

With respect to the final factor, the plaintiff has identified no evidence that the

_____

[14]*E.g., Butler v. Alabama Department of Transportation*, 536 F.3d 1209, 1210 (11th Cir. 2008).

[15]*See Harrington v. Disney Regional Entertainment, Inc*., 276 Fed. Appx. 863, 875-76 (11th Cir. 2007). *But cf. Washington*, 218 Fed. Appx. at 825 (being called "boy" was "not severe or extreme").

[16]*Meritor Savings Bank v. Vinson*, 477 U.S. 57, 67 (1986); *accord Harris*, 510 U.S. at 21.

[17]*See Harrington*, 276 Fed. Appx. at 876 (being called a "lazy nigger" one time); *Barber v. International Brotherhood*, 778 F.2d 750, 761 (11th Cir. 1985) (being called a "smart ass nigger" one time).

-14-

harassing conduct interfered with her work performance.  *See, e.g, Mendoza*, 195 F.3d at 1249 (absent record evidence of impairment of job performance, this factor weighs against the plaintiff).

In summary, each of the four factors for assessing whether the harassment was sufficiently severe or pervasive to alter the terms and conditions of her employment weighs against the plaintiff.  Because she has not demonstrated a genuine issue of material fact as to this element of her claim, it fails as a matter of law.

### IV.  Title VII - Hostile Work Environment - Sex.

The second amended complaint alleges that the plaintiff was sexually harassed by Burnam.  (Doc. 39, ¶¶ 11-13).  The claim is directed against "the Defendants."  (*Id*., ¶ 11).

As noted in Part I.A, the plaintiff can have no Title VII claim against the individual defendants.  Accordingly, only the City is a potential defendant to the plaintiff's sexual harassment claim.  The City, however, has not challenged the sexual harassment claim, instead focusing exclusively on racial harassment.  (Doc. 102 at 5-9). The City cannot obtain summary judgment on a claim it has not addressed.

### V.  Title VII - Retaliation.

The second amended complaint alleges that the defendants retaliated against the plaintiff for "exposing her discriminatory work conditions and sexual advances by a city official and for filing a charge with" the EEOC.  (Doc. 39, ¶ 16).  It also alleges that McKelroy, Cureton and Small retaliated against her after she returned to work in the police department.  (*Id*., ¶ 18).

"It shall be an unlawful employment practice for an employer to discriminate against any of [its] employees ... because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified,

assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a). The plaintiff alleges retaliation under both the "opposition" and the "participation" prongs of this statute.

"A prima facie case of retaliation under Title VII requires the plaintiff to show that: (1) she engaged in an activity protected under Title VII; (2) she suffered an adverse employment action; and (3) there was a causal connection between the protected activity and the adverse employment action." *Crawford v. Carroll*, 529 F.3d 961, 970 (11th Cir. 2008). The second element has been softened so that the adverse action need only be one that a reasonable employee would have found materially adverse in that it "might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington Northern & Santa Fe Railway v. White*, 548 U.S. 53, 68 (2006).

In order to establish the first element of her prima facie case under the opposition clause, the plaintiff need not show that the defendant's conduct which she opposed actually was in violation of Title VII. However, she must demonstrate both that she in good faith believed the conduct violated that statute and that her belief was "objectively reasonable in light of the facts and record presented." *Butler v. Alabama Department of Transportation*, 536 F.3d 1209, 1213 (11th Cir. 2008) (internal quotes omitted). In the context of a hostile work environment, the plaintiff must have an objectively reasonable belief that the conduct complained of "permeate[s] the workplace with discriminatory intimidation, ridicule, and insult and ... alter[s] the conditions of the victim's employment and create[s] an abusive working environment." *Id*. at 1214.

The only evidence that the plaintiff opposed race or sex discrimination is that, at one point in 2005, she told Cureton that she found McKelroy's "little green drugstore" comment to be racially offensive. (Doc. 99, Exhibit 3 at 42; *id*., Exhibit 6 at 55, 75). As discussed in Part III, that single comment does not remotely support a hostile work environment claim, and as a matter of law the plaintiff could not possess an objectively

reasonable belief that it did.[18]  This precludes the plaintiff's ability to establish a prima facie case under the opposition clause.

With respect to the participation clause, the second amended complaint admits that the plaintiff's EEOC charge was not filed before early April 2006.  (Doc. 39, ¶ 7).  As a matter of law, no conduct preceding that date could be retaliatory.  *E.g., McCann*, 526 F.3d at 1376 ("At a minimum, [a plaintiff] must show that the adverse act followed the protected conduct ....") (internal quotes omitted).  All of the plaintiff's evidence[19] addresses conduct occurring before April 2006.  Because there is no evidence that the defendants retaliated against the plaintiff after she filed her EEOC charge, she cannot establish the second element of her prima facie case under the participation clause.

## VI.  Section 1983 - Fifth/Fourteenth Amendment - Equal Protection.

The second amended complaint alleges that the defendants violated the plaintiff's equal protection rights under the Fifth and Fourteenth Amendments.  (Doc. 39, ¶¶ 3, 15-16).

"Although the Supreme Court does not regard as identical the constraints of Title VII and the Federal Constitution, ... when Section 1983 is used as a parallel remedy for violation ... of Title VII, the elements of the two causes of action are the same." *Underwood v. Perry County Commission*, 431 F.3d 788, 793 (11th Cir. 2005) (internal quotes and citations omitted).  The same prima facie case is also employed.  *Richardson*

---

[18]*See Butler*, 536 F.3d at 1213 (any belief that a hostile work environment was created by a co-worker's twice calling another driver a "nigger" after their vehicles collided "is not objectively reasonable.  It is not even close."); *Clover v. Total System Services, Inc*., 176 F.3d 1346, 1350-51 (11th Cir. 1999) (any belief that a hostile work environment was created by a manager's hitting on a teenage employee was not objectively reasonable and "misses the mark by a country mile").

[19]Other than with respect to Taylor, who is the subject of a separate retaliation claim.  *See infra* Part XIII.

*v. Leeds Police Department*, 71 F.3d 801, 805 (11th Cir. 1995).  Because, as discussed in Parts I-III and V, the plaintiff cannot establish a prima facie case of race discrimination, sex discrimination, or retaliation under Title VII, and cannot establish the fourth element of a claim for racially hostile work environment under Title VII, neither can she survive summary judgment on her corresponding Fifth/Fourteenth Amendment claims brought through Section 1983.  However, the plaintiff's sexual harassment claim under Section 1983 survives for the same reason discussed in Part IV.[20]

## VII.  Section 1983 - Fifth/Fourteenth Amendment - Due Process.

The second amended complaint alleges that the defendants violated the plaintiff's due process rights under the Fifth and Fourteenth Amendments.  (Doc. 39, ¶¶ 15-16). The defendants have not addressed this claim[21] and accordingly cannot obtain summary judgment as to it.

## VIII.  Section 1983 - First Amendment.

---

[20]The City presents a generalized "policy or custom" argument, (Doc. 102 at 10-13), but it does not purport to address sexual harassment.  Nor would the City's argument — simply positing that the plaintiff "is unable to establish" a policy or custom or its causal relation to her claims — meet its initial burden on motion for summary judgment even had it addressed sexual harassment.  *See Clark*, 929 F.2d at 608 ("The moving party bears the initial burden to show the district court, *by reference to materials on file*, that there are no genuine issues of material fact that should be decided at trial. ... *Even after* Celotex *it is never enough simply to state that the non-moving party cannot meet its burden at trial.*") (emphasis added); *accord Mullins v. Crowell*, 228 F.3d 1305, 1313 (11th Cir. 2000).

As for the individual defendants, they offer a generalized qualified immunity argument, but it likewise does not purport to address sexual harassment and is by its terms limited to racial claims.  (Doc. 98 at 30-33).  To be clear, the Court does not reject a qualified immunity defense that has been properly presented but finds itself unable to address a qualified immunity defense that has not been raised.

[21]*See* note 20.

The second amended complaint alleges that the defendants violated the plaintiff's rights as guaranteed by the First Amendment.  (Doc. 39, ¶¶ 3, 16).  The defendants have not addressed this claim[22] and accordingly cannot obtain summary judgment as to it.

## IX.  Section 1985(2) and (3).

The second amended complaint alleges that the defendants conspired in violation of Sections 1985(2) and (3).  (Doc. 39, ¶¶ 3, 14-16).  All the defendants are employees and/or agents of the City, and the plaintiff alleges only that the defendants entered a civil conspiracy among themselves relating to the performance of their official duties.  Under such circumstances, the intra-corporate conspiracy doctrine bars the plaintiff's action. *E.g., Denney v. City of Albany*, 247 F.3d 1172, 1190-91 (11th Cir. 2001); *McAndrew v. Lockheed Martin Corp.*, 206 F.3d 1031, 1037-38 (11th Cir. 2000) (en banc); *Dickerson v. Alachua County Commission*, 200 F.3d 761, 767-68 (11th Cir. 2000).[23]

## X.  Section 1986.

The second amended complaint alleges that the defendants violated 42 U.S.C. § 1986.  (Doc. 39, ¶¶ 3, 14).  This claim has not been addressed by the defendants in any fashion and so is not susceptible of summary judgment.

## XI.  Outrageous Conduct.

The second amended complaint alleges that the conduct alleged therein was outrageous and that the City is liable therefor.  (Doc. 39, ¶¶ 112-16).  A legitimate claim of outrage requires "conduct so outrageous in character and so extreme in degree as to go

---

[22]*See* note 20.

[23]The *McAndrew* Court held that the intra-corporate conspiracy doctrine does not apply to Section 1985(2) when a criminal conspiracy is alleged.  206 F.3d at 1039-42. The plaintiff, however, does not allege a criminal conspiracy.

beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized society." *Thomas v. BSE Industrial Contractors, Inc*., 624 So. 2d 1041, 1043-44 (Ala. 1993). The Alabama Supreme Court "has consistently held that the tort of outrage is a very limited cause of action that is available only in the most egregious circumstances." *Id*. at 1044.

The plaintiff's evidence does not remotely approach this stringent standard. Even a cursory review reveals that the Alabama Supreme Court routinely holds comparable conduct to be legally inadequate to support a claim of outrage.[24] Claims arising in an employment context have fared no better.[25] As a matter of law, the plaintiff's evidence is insufficient to create a genuine issue of material fact.

Moreover, due to Alabama Code § 11-47-190, "a municipality cannot be held liable for the intentional torts of its agents." *Ex parte City of Tuskegee*, 932 So. 2d 895, 910-11 (Ala. 2005). The tort of outrageous conduct is an intentional tort, *e.g., Gibson v.*

---

[24]*See, e.g.*, *Callens v. Jefferson County Nursing Home*, 769 So. 2d 273, 276, 281 (Ala. 2000) (nursing home forcibly restrained a patient to the point of fracturing her hip, then falsely told the patient's guardian that the patient had injured herself); *Ex parte Mutual Savings Life Insurance Co.*, 698 So. 2d 772, 774 (Ala. 1997) (life insurer issued policies on the plaintiff and her son to the plaintiff's sister without the plaintiff's awareness and in violation of company rules, then kept the policy in force for almost three years after the plaintiff's brother killed the plaintiff's son (two months after the policy was taken out) and for nine months after hearing the plaintiff's sister admit she had forged the plaintiff's signature on the application).

[25]*See, e.g., Carraway Methodist Health Systems v. Wise*, 986 So. 2d 387, 401-02 (Ala. 2007) (employer unceremoniously terminated the plaintiff in violation of their employment contract); *Stabler v. City of Mobile*, 844 So. 2d 555, 560-62 (Ala. 2002) (police sergeant wrote an unfavorable letter to his subordinate's prospective employer that was both libelous and in violation of department rules concerning confidentiality and officer criticism); *Buzbee v. Alabama Waste Services, Inc*., 709 So. 2d 61, 64, 67 (Ala. 1998) (employer illegally terminated the plaintiff in retaliation for filing a worker's compensation claim); *Shepherd v. Summit Management Co.*, 726 So. 2d 686, 689-90, 694 (Ala. Civ. App. 1998) (supervisor told the plaintiff "that's why I don't like niggers" and "sometimes you have to be treated like slaves").

*Southern Guaranty Title Co.*, 623 So. 2d 1065, 1066 (Ala. 1993), and the City is immune to liability for it.

## XII.  Negligent Management.

The second amended complaint alleges that the City negligently hired, trained, supervised and retained its employees and agents, which resulted in a pervasive racially hostile work environment.  (Doc. 39, ¶¶ 117-21).

"We note that a party alleging negligent supervision and hiring must prove the underlying wrongful conduct of the defendant's agents."  *University Federal Credit Union v. Grayson*, 878 So. 2d 280, 291 (Ala. 2003).  Thus, if the underlying claim against the agent is dismissed on motion for summary judgment, the negligent management claim cannot succeed.  *Flying J Fish Farm v. Peoples Bank*, 2008 WL 4687091 at *9 (Ala. 2008); *accord Chambless v. Louisiana-Pacific Corp.*, 481 F.3d 1345, 1350 (11th Cir. 2007) ("Once the magistrate judge dismissed the federal sexual harassment charge, [the plaintiff] was required to establish some other underlying tort in order to prevail on her state law claims for negligent training, supervision, and retention.").  Because the plaintiff's racial harassment claim does not survive summary judgment, she cannot prove her claim of negligent management.  However, because the defendants did not raise this argument in their briefs, the Court does not rely on it.

Claims of negligent management require the plaintiff to show that the employee was incompetent and that the employer knew of, or had notice of, the employee's incompetency, based on past conduct reflecting the incompetency.  *Pritchett v. ICN Medical Alliance, Inc*., 938 So. 2d 933, 940 (Ala. 2006); *Mardis v. Robbins Tire & Rubber Co.*, 669 So. 2d 885, 889-90 (Ala. 1995).  The only evidence of notice here is that the plaintiff informed Cureton she considered McKelroy's "little green drugstore" comment to be racially offensive.  As discussed in Part III, this comment is not overtly racial, and any racial connotation requires several leaps to discern (the drugstore is a

neighbor's house; the neighbor's grandson sells drugs there; among those drugs is crack; blacks use crack; therefore, the plaintiff does or might use crack).  There is no evidence that the plaintiff explained to Cureton her interpretation of McKelroy's comment, and so no evidence that Cureton was on notice of a racial comment.  Even if there were, this single, mild comment was insufficient as a matter of law to place the City on notice that McKelroy was a threat to create a pervasive racially hostile work environment.

## XIII.  Title VII - Retaliation.

The second amended complaint alleges the City and Taylor[26] retaliated against the plaintiff for filing her complaint in this action in July 2007.  (Doc. 39, ¶ 127).  In her deposition, the plaintiff limited this claim to a December 2007 incident.  (Doc. 99, Exhibit 1 at 169-72).

As noted in Part V, to establish a prima facie case of retaliation under Title VII, the plaintiff must show that there was a causal connection between her protected activity and the allegedly retaliatory conduct.  "The burden of causation can be met by showing close temporal proximity between the statutorily protected activity and the adverse employment action."  *Thomas v. Cooper Lighting, Inc.*, 506 F.3d 1361, 1364 (11th Cir. 2007).  However, "[a] three to four month disparity between the statutorily protected expression and the adverse employment action is not enough."  *Id.*; *accord Higdon v. Jackson*, 393 F.3d 1211, 1221 (11th Cir. 2004) ("By itself, the three month period between [the protected expression and the adverse action] does not allow a reasonable inference of a causal relation between the protected expression and the adverse action."); *Wascura v. City of South Miami*, 257 F.3d 1238, 1248 (11th Cir. 2001) (a gap of four months is too long to constitute close temporal proximity).  There were five full months between the filing of this action and the December 2007 incident of which the plaintiff complains.  As

---

[26]As noted in Part I.A, only the plaintiff's employer is a proper defendant under a Title VII claim.  Accordingly, Taylor is entitled to summary judgment.

a matter of law, causal connection cannot be inferred from this timing.

It is possible to rely on evidence other than timing to satisfy the causal relation requirement.  The plaintiff, however, identifies no such evidence.  "[I]n the absence of other evidence tending to show causation, if there is a substantial delay between the protected expression and the adverse action, the complaint of retaliation fails as a matter of law." *Thomas*, 506 F.3d at 1364.  Because the plaintiff suggests no other evidence of causation, her claim necessarily fails.

## CONCLUSION

For the reasons set forth above, the defendants' motions for summary judgment are **granted** as to all defendants with respect to the plaintiff's claims of: (a) race discrimination under Title VII; (b) sex discrimination under Title VII; (c) racially hostile work environment under Title VII; (d) retaliation under Title VII; (e) conspiracy under Sections 1985(2) and 1985(3); (f) outrageous conduct; and (g) negligent management. The motions for summary judgment on the plaintiff's claim of sexual harassment under Title VII is **denied** with respect to the City and **granted** with respect to all other defendants.  The motions for summary judgment on the plaintiff's Section 1983 equal protection claims are **granted** as to all defendants with respect to race discrimination, sex discrimination, racially hostile work environment and retaliation and **denied** with respect to sexual harassment.  In all other respects, the motions for summary judgment are **denied**.[27]

DONE and ORDERED this 23rd day of June, 2009.

s/ WILLIAM H. STEELE
UNITED STATES DISTRICT JUDGE

_____

[27]These rulings leave the following claims in the case: (a) Title VII sexual harassment claim against the City; (b) Section 1983 equal protection claim based on sexual harassment, against all defendants but Taylor; (c) Section 1983 due process claim against all defendants but Taylor; (d) Section 1983 First Amendment claim against all defendants but Taylor; and (e) Section 1986 claim against all defendants but Taylor.