# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **MARIE ANITA NICHOLSON,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **CIVIL ACTION 07-0496-WS-M** |
| | ) | |
| **CITY OF DAPHNE, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## ORDER

This matter is before the Court on the plaintiff's motion for reconsideration or alternatively relief from the Court's order on motion for summary judgment.  (Doc. 123). After carefully considering the motion and other relevant material in the file, the Court concludes that the motion is due to be denied.

## BACKGROUND

Suit was filed July 9, 2007, based on a 44-page complaint that expanded to 46 pages in its third iteration, encompassing 13 claims against ten defendants.  (Doc. 39). The defendants moved for summary judgment on December 19, 2008.  (Docs. 97, 101). The plaintiff was given the usual 28 days to respond to the motions.  (Doc. 106).  On the final day, she requested and received a 30-day extension due to counsel's unidentified medical condition.  (Docs. 107, 108).

In late February, eight days after the amended deadline expired, the plaintiff requested a second extension, again due to counsel's undescribed health issues.  (Doc. 111).[1]  The motion represented that additional counsel would be filing a notice of appearance and "will assist in preparing the Response to assure the Response will be filed

---

[1]The "separate document detailing undersigned counsel's medical situation," (*id.*, ¶ 3), was never delivered to the Court.  (Doc. 115 at 1 n.1).

on or before the date set by the court." (*Id.*, ¶ 4).  In reliance on this representation, the Court on March 2 granted an extension to April 2.  (Doc. 115).  This extension required pushing back the pretrial conference and trial by three months.  (Doc. 115).[2]  The Court expressly warned that it "will not consider favorably additional plaintiff's motions for enlargement of time absent extraordinary circumstances that have thus far not been shown to exist."  (*Id.* at 1).

On March 2, additional counsel filed a notice of appearance on behalf of the plaintiff.  (Doc. 114).  Nevertheless, the plaintiff filed no response to the motions for summary judgment.  Instead, 13 days after the second amended deadline expired, the plaintiff requested a third extension.  (Doc. 117).  This motion was filed by additional counsel and was based on the significant amount of material needing review.  (*Id.*, ¶¶ 4-5).  The plaintiff specifically requested a 14-day extension of time.  (*Id.* at 2).  On April 16, the Court granted an extension to April 29, the date requested by the plaintiff.  (Doc. 118).  The Court stated that "[i]t is not expected that any further extensions will be requested or granted."  (*Id.*).

Despite this clear warning, the plaintiff did not submit any opposition to the motions for summary judgment, or any other filing.  On June 24, after spending an entire week evaluating the motions, the Court issued a 23-page order resolving them.  (Doc. 119).  In brief, the Court granted the motions as to all defendants with respect to eight claims; granted the motions as to some but not all defendants with respect to one claim; granted the motions as to part but not all of one claim; and denied the motions in full as to three claims.  The Court's ruling was not based on the plaintiff's failure to oppose the motions but on the merits of the motions as revealed by the Court's painstaking review of the argument and evidence presented by the defendants and of the law applicable to each claim and each defendant.

_____

[2]In order to cope with the criminal docket and other demands, active judges in this District conduct civil jury trials only every third month.

On June 29, the plaintiff filed a 58-page brief in opposition to the motions for summary judgment, and on July 1 she filed over 500 pages of exhibits in support of her opposition, including her own 35-page affidavit.  (Docs. 120, 124-25).  On June 30, the plaintiff filed the instant motion.

## DISCUSSION

The plaintiff seeks relief under Federal Rules of Civil Procedure 59, 60(b)(1), and 60(b)(6) or, in the alternative, through a motion for reconsideration.

### I.  Rules 59 and 60(b).

These rules do not apply, because the Court has entered no final order or judgment but only an interlocutory order.  *In re: Bayshore Ford Truck Sales, Inc*., 471 F.3d 1233, 1260-61 (11th Cir. 2006) (grant of partial summary judgment is an interlocutory order); *Toole v. Baxter Healthcare Corp*., 235 F.3d 1307, 1315 (11th Cir. 2000) (an interlocutory order is not subject to the limitations of Rule 59); *Bon Air Hotel, Inc. v. Time, Inc*., 426 F.2d 858, 862 (5th Cir. 1970) (an interlocutory order is not subject to Rule 60(b)).[3]  Nor would the plaintiff's position be improved were these rules applicable, as she relies exclusively on an "excusable neglect" test that she cannot meet.  (Doc. 123 at 2-5).

As the plaintiff recognizes, the existence of excusable neglect depends on a factor analysis, including "'the danger of prejudice to [the opposing party], the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith.'"  *Cheney v. Anchor Glass Container Corp*., 71 F.3d 848, 850 (11th Cir.

---

[3]*Accord Jones v. Bernanke*, 557 F.3d 670, 677 (D.C. Cir. 2009); *Fye v. Oklahoma Corporation Commission*, 516 F.3d 1217, 1223 n.2 (10th Cir. 2008); *Santamarina v. Sears, Roebuck & Co.*, 466 F.3d 570, 571 (7th Cir. 2006); *Nieves-Luciano v. Hernandez-Torres*, 397 F.3d 1, 4 (1st Cir. 2005); *American Canoe Association v. Murphy Farms, Inc*., 326 F.3d 505, 514 (4th Cir. 2003).

1996) (quoting *Pioneer Investment Services Co. v. Brunswick Associates Limited
Partnership*, 507 U.S. 380, 395 (1993)).  The Court's assessment of excusable neglect is
reviewable only for abuse of discretion.  *E.g., Locke v. SunTrust Bank*, 484 F.3d 1343,
1346 n.2 (11th Cir. 2007).

### A. Reason for Delay.

The plaintiff's reason for delay is "almost totally" her original attorney's health
condition.  She relates that counsel became ill on May 25, was hospitalized almost
constantly until June 7, and that he returned to his office, for short hours, on June 19.
(Doc. 123 at 3-5).  The Court is genuinely sympathetic with counsel's condition, but these
facts do not explain or justify the plaintiff's failure to respond to the motions for summary
judgment, for two separate reasons.

First, the plaintiff's response was due April 29, so counsel's medical condition
beginning May 25 cannot excuse her failure to file her response almost a month
previously.[4]  Second, the plaintiff has two lawyers, and there is no indication that her
second attorney has been incapacitated.  The plaintiff has three times moved for an
extension of time, so that even if there had been some reason the response could not be
filed by April 29, her recourse, as she well knew, was to seek a fourth extension, not to
ignore the deadline and file nothing.  *Cf. Pioneer*, 507 U.S. at 398 ("In assessing the
culpability of respondent's counsel, we give little weight to the fact that counsel was
experiencing upheaval in his law practice at the time of the [deadline].").

The plaintiff suggests in a footnote another reason she filed no opposition to
summary judgment.  She states that she learned during discovery that the Daphne City
Council had engaged an outside human resources expert, albeit in connection with a

---

[4]*See Mosley v. MeriStar Management Co*., 137 Fed. Appx. 248, 250 (11th Cir.
2005) (the plaintiff's assistance of her sister in a medical emergency on March 1 could
not show excusable neglect, since her opposition to summary judgment had been due
February 27).

separate case.  The defendants assured plaintiff's counsel that the expert's report had no evidentiary significance, and the plaintiff apparently did not request it in discovery. Nevertheless, in early May the plaintiff received from the defendants a summary of city council action from November 2008 that included a direction to the mayor and human resources manager to adopt and implement the expert's (unidentified) recommendations as set forth in her report.  The defendants agreed to produce the expert's report, but have not done so.  Counsel, for reasons unexplained, "[b]eliev[ed] the report would be dispositive of a number of issues," and so withheld filing the plaintiff's response to the motions for summary judgment (which was more or less "ready" to file, pending final editing) while awaiting receipt of the report.  (Doc. 123 at 3-4 n.1).

These circumstances cannot affect the analysis of excusable neglect.  First, the plaintiff admits that the reason for her delay was "almost totally" health related, so her interest in the report could not have been a meaningful factor in her failure to file a response.  Second, the plaintiff's interest in the report was piqued by a document she received in May, by which time her response was already untimely.  Third, by the plaintiff's own account of it the report is not significant to this lawsuit and so could not have justified any delay in opposing summary judgment.[5]  Fourth, since the plaintiff did not request the document in discovery, she could not reasonably have expected to successfully demand its production or to successfully move to compel production.[6]  Fifth, if the plaintiff believed the report to be potentially significant, her recourse was either to

---

[5]According to the plaintiff, all this information adds to her case is that — several years after the events made the basis of the plaintiff's race discrimination claims, and in consequence of another employee's challenge —  the expert recommended that the mayor and human resources director "participate in an activity akin to skill development in human resource management."  (*Id.*).  The plaintiff does not explain, and the Court cannot discern, any significance of this fact to whether the plaintiff was a victim of race discrimination.

[6]The plaintiff concedes as much.  (Doc. 123 at 4 n.1).

file her response and seek to supplement it upon receipt of the report or to seek another extension of time to file her response.  By doing neither, she risked precisely what occurred — an adverse ruling without any opposition materials before the Court.[7]

While some failures to comply with deadlines or to oppose motions may be explained on grounds consistent with excusable neglect, they usually involve reasonable ignorance of the deadline or miscommunication as to compliance with it.  *See Walter v. Blue Cross and Blue Shield United*, 181 F.3d 1198, 1202 (11th Cir. 1999) (secretary's failure to calendar the applicable deadline); *Cheney*, 71 F.3d at 849-50 (secretary's failure to relay message from associate to partner that associate had not (as the partner assumed) filed a demand for trial de novo).  Here, there is no question but that the plaintiff knew of the April 29 deadline and knowingly failed to comply with it.

For the reasons stated above, the Court finds that the plaintiff has offered no adequate reason for her failure to file a response to the motions for summary judgment or even a motion for extension of time to do so.  Moreover, her failure was squarely within her control.  This factor therefore weighs against her.

### B.  Length of Delay and Impact on Judicial Proceedings.

The plaintiff's opposition to the motions for summary judgment was due April 29. It was filed June 29, a full two months late, an unusually long delay.  *Cf. Walter*, 181 F.3d at 1202 (indicating a one-month delay in opposing a motion to dismiss was significant).

In addition to the length of delay, the Court is to consider any "adverse impact on the district court [and] its resources."  *Walter*, 181 F.3d at 1202.  The plaintiff's response was not filed until after the Court resolved the motions for summary judgment, until after it devoted a full week of its time to grappling with the 13 claims that her 46-page

[7]The plaintiff suggests the defendants assured counsel they would not request the Court to rule on the pending motions.  (Doc. 123 at 4 n.1).  But the Court's consideration of the motions was not dependent on someone requesting it, since the Court had explicitly declared that the motions would be taken under submission on May 13.  (Doc. 118).

complaint alleged against various subsets of ten defendants.  Allowing the plaintiff to challenge that ruling now would require the Court to start all over again on this laborious process, resulting in an unacceptable drain on the Court's already taxed resources. Allowing the plaintiff's late filing would also require that the pretrial conference and trial — already delayed once due to the plaintiff's motions for extension of time — to be pushed back yet another three months, if not more.[8]

In sum, this factor weighs against the plaintiff.

### C.  Prejudice to the Defendants.

The Court assumes for present purposes that the defendants would not be prejudiced by setting aside the partial summary judgment and considering the plaintiff's tardy opposition.  *Cf. Walter*, 181 F.3d at 1202 (the defendant admitted it would not suffer prejudice were the Court to set aside its dismissal of the plaintiff's lawsuit and allow the plaintiff to file a tardy opposition to the motion to dismiss).[9]

### D.  Good Faith.

---

[8]Even assuming that the Court would accept the plaintiff's excessively long brief and untailored evidentiary submissions without requiring a re-submission in compliance with local rules on length, form and other matters, the defendants would still require at least the ordinary two weeks for reply, and the Court — which has many other ripe matters needing resolution before it returns to this case — would require additional time to sort the matter out.  The case could not possibly be ready for pretrial conference in July and trial in August.  Nor is it clear that the case could be pretried in October, since the Court presently has 16 cases set for pretrial conference in October, more than it can possibly try in November.

[9]The district court in *Walter* granted the motion to dismiss based solely on the plaintiff's failure to file a brief in opposition.  *Id.* at 1199.  As noted, the Court did not grant partial summary judgment based on the plaintiff's failure to oppose it but based on its careful assessment of the motions' merits.  The Court need not decide whether depriving the defendants of this ruling on the merits could constitute prejudice under *Pioneer*.

The plaintiff insists that counsel acted in good faith, and the Court sees no basis for questioning this assertion.

**E.  Synthesis.**

Ordinarily, "primary importance [attaches] to the absence of prejudice to the nonmoving party and to the interest of efficient judicial administration." *Cheney*, 71 F.3d at 850.  The plaintiff, however, insists that her reason for delay is the most important factor.  (Doc. 123 at 2-3).  Either way, the excusable neglect analysis falls heavily against her.  The damage to the interests of efficient judicial administration that would ensue were the plaintiff's tardy opposition to be considered is substantial, and the plaintiff's lack of any legitimate reason for not filing her opposition by April 29 exacerbates the situation.  Neither a lack of prejudice to the defendants nor the plaintiff's assumed good faith adequately compensates for the heavy weight of the other factors.  *Cf. In re: Worldwide Web Systems, Inc.*, 328 F.3d 1291, 1297 (11th Cir. 2003) (under *Pioneer*, all the factors must be considered, and the absence of substantial prejudice to the non-movant did not tip the scales so far in favor of the movant as to excuse his failure to present a good reason for his failure to respond to the complaint).

In summary, Rules 59 and 60(b) do not apply, and the plaintiff could not satisfy their "excusable neglect" standard if they did.

**II.  Motion to Reconsider.**

As an alternative to relief under Rule 59 or 60, the plaintiff moves for reconsideration of the Court's order on motions for summary judgment.  The Court's resolution of such a motion is reviewable only for abuse of discretion.  *Sabatier v. Sun Trust Bank*, 301 Fed. Appx. 913, 914 (11th Cir. 2008).  A motion to reconsider may not be used as a vehicle to inject new arguments into the underlying motion, or to submit evidence previously available but not properly presented on the underlying motion.  *Mays*

*v. United States Postal Service*, 122 F.3d 43, 46 (11th Cir. 1997).[10]  In short, "[a] motion to reconsider is only available when a party presents the court with evidence of an intervening change in controlling law, the availability of new evidence, or the need to correct clear error or manifest injustice."  *Gibson v. Mattox*, 511 F. Supp. 2d 1182, 1185 (S.D. Ala. 2007) (internal quotes omitted).

Because the plaintiff submitted no evidence or argument in opposition to the motions for summary judgment, she may not do so on motion to reconsider.  Nor is there any manifest injustice in holding the plaintiff to the consequences of her failure to file any response to the motions for summary judgment.  This is underscored by the Eleventh Circuit's discussion in two recent cases involving plaintiffs' tardy efforts to oppose summary judgment.

"We have frequently railed about the evils of shotgun pleadings [which the instant complaint certainly was] and urged district courts to take a firm hand and whittle cases down to the few triable claims, ... through summary judgment where there is no genuine issue of material fact."  *Chapman v. AI Transport*, 229 F.3d 1012, 1027 (11th Cir. 2000) (en banc).  "It would seriously impair the ability of district courts to pare down the issues in multi-claim civil cases if we required them to revisit and re-evaluate a summary judgment previously granted on one claim because of evidence that comes out later at the trial of other claims."  *Id*.  Allowing such late filings to undo the Court's work "would burden our already heavily burdened district courts with multiple trials in a single case where one should suffice. ...  There is no good reason for inflicting that burden of

---

[10]While *Mays* involved a post-judgment motion under Rule 59(e), courts within this Circuit have often applied its holding to pre-judgment motions to reconsider.  *E.g., Busby v. JRHBW Realty, Inc*., 2009 WL 1181902 at *2 (N.D. Ala. 2009); *Controlled Semiconductor, Inc. v. Control Systemation, Inc*., 2008 WL 4459085 at *2 (M.D. Fla. 2008); *Eslava v. Gulf Telephone Co.*, 2007 WL 1958863 at *1 (S.D. Ala. 2007);  *Summit Medical Center, Inc. v. Riley*, 284 F. Supp. 2d 1350, 1355 (M.D. Ala. 2003). This is only sensible, since allowing parties to withhold arguments and evidence until after losing is equally destructive of judicial economy and fairness in either context.

multiple trials upon our system with its finite resources." *Id.* Thus, a trial court's refusal to re-open a motion for summary judgment is reviewed for abuse of discretion. *Id.* at 1026.

The burdens and inefficiencies identified by the *Chapman* Court are present not only when the plaintiff waits until after trial to present his evidence but also when he delays until after the Court's resources have been expended resolving a summary judgment motion. The bottom line is that "[p]arties opposing summary judgment are appropriately charged with the responsibility of marshaling and presenting their evidence before summary judgment is granted, not afterwards." *Chapman*, 229 F.3d at 1027.

Similarly, a trial court's refusal to consider a late-filed opposition to summary judgment is reviewed for abuse of discretion. *Young v. City of Palm Bay*, 358 F.3d 859, 864 (11th Cir. 2004). Where the plaintiff received four extensions of time but was denied a fifth and failed to file by the last deadline, "the district court had a range of options which included refusing to consider untimely filings." *Id.* "In the courts, there is room for only so much lenity. The district court must consider the equities not only to plaintiff and his counsel, but also to the opposing parties and counsel, as well as to the public. Counsel must take responsibility for the obligations to which he committed and get the work done by the deadline. ... Deadlines are not meant to be aspirational; counsel must not treat the goodwill of the court as a sign that, as long as counsel tries to act, he has carte blanche permission to perform when he desires." *Id.*[11]

---

[11]This is but a particular application of a more general principle. "[I]n order to ensure the orderly administration of justice, [a trial court] has the authority and responsibility to set and enforce reasonable deadlines." *Lowe's Home Centers, Inc. v. Olin Corp.*, 313 F.3d 1307, 1315 (11th Cir. 2002). The Eleventh Circuit has repeatedly employed this rule to uphold trial courts' enforcement of deadlines. *E.g., School Board of Collier County v. K.C.*, 285 F.3d 977, 981-82 (11th Cir. 2002) (untimely expert testimony); *Enwonwu v. Fulton-DeKalb Hospital Authority*, 286 Fed. Appx. 586, 595 (11th Cir. 2008) (untimely motion for summary judgment); *Edman v. Marano*, 177 Fed. Appx. 884, 886 (11th Cir. 2006) (untimely request for mental examination).

In sum, "[t]he district court's refusal to consider an untimely opposition to [a] summary judgment motion is not an abuse of discretion."  *Mosley v. MeriStar Management Co.*, 137 Fed. Appx. 248, 250 (11th Cir. 2005) (summarizing *Young*).  Given that the plaintiff here received three extensions of time to respond, yet failed to respond for two full months after the final deadline (which she requested) expired, despite explicit warning that additional extensions were unlikely, *Young*'s comments are particularly pertinent.

The Court recognizes the personal difficulty confronting the plaintiff's original counsel.  However, the Court cannot ignore: his failure to file a response by the April 29 deadline, almost a month before his acute illness; the failure of co-counsel (who filed the final motion for extension of time) to file a response by the April 29 deadline he himself requested; the failure of either lawyer to file a motion for extension of time or otherwise to notify the Court of the situation, to the extent one existed; the substantial time the Court has irretrievably invested in resolving the motions for summary judgment on the eminently reasonable assumption that the plaintiff had elected to file nothing in opposition; the essential waste of that time which would ensue should reconsideration be granted; and the continued delay in resolution of this two-year-old case that reconsideration would entail.

## CONCLUSION

For the reasons set forth above, the plaintiff's motion for reconsideration or relief from order is **denied**.

DONE and ORDERED this 7th day of July, 2009.

> s/ WILLIAM H. STEELE
> UNITED STATES DISTRICT JUDGE