IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| **MARIE ANITA NICHOLSON,** )<br> )<br> **Plaintiff,** )<br> )<br>v. )<br> )<br>**CITY OF DAPHNE, et al.,** )<br> )<br> **Defendants.** ) | **CIVIL ACTION 07-0496-WS-M** |

**ORDER**

After the plaintiff rested on the evening of November 19, the defendants filed a motion for judgment as a matter of law ("JMOL"). (Doc. 197). The defendants submitted a brief in support of their motion, (Doc. 198), and both parties presented oral argument on the morning of November 20.[1] After carefully considering all these materials, as well as the testimony and exhibits introduced during the plaintiff's case, the Court orally granted the defendants' motion. The Court enters this order to more fully explain its ruling.

A motion for JMOL should be granted when, after "a party has been fully heard on an issue," the Court finds that "a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue [and], under the controlling law, [the party's claim] can be maintained only with a favorable finding on that issue." Fed. R. Civ. P. 50(a). "In order to survive a defendant's motion for judgment as a matter of law, offered at the conclusion of the plaintiff's case, the plaintiff must present evidence that would permit a reasonable jury to find in the plaintiff's favor on each and every element of the claim." *Nebula Glass International, Inc. v. Reichhold, Inc.*, 454 F.3d 1203, 1210 (11th Cir. 2006) (internal quotes omitted). "[T]he non-movant must do more than raise

---

[1] Because the plaintiff filed no brief, all references to her arguments denote her counsel's statements at oral argument of the defendants' motion.

some doubt as to the existence of facts but must produce evidence that would be sufficient to require submission of the issue to a jury." *Thorne v. All Restoration Services, Inc.*, 448 F.3d 1264, 1266 (11th Cir. 2006). "Although we look at the evidence in the light most favorable to the non-moving party, the non-movant must put forth more than a mere scintilla of evidence suggesting that reasonable minds could reach differing verdicts." *Id*. (internal quotes omitted). Therefore, a substantial conflict in the evidence is required before a matter will be sent to the jury, and the grant of a Rule 50 motion is proper when the evidence is so weighted in favor one side that the party is entitled to succeed in his or her position as a matter of law." *Id*.

**I. Sexual Harassment.**

By previous Court order, this claim was limited to sexual harassment by Greg Burnham. (Doc. 143 at 2). The plaintiff asserts sexual harassment both under Title VII and under Section 1983.

The plaintiff testified that Burnham sexually harassed her between late 2001 and March 2005.

The plaintiff testified that Burnham touched her one time, when he kissed her on the cheek during a public event, in view of multiple witnesses. The plaintiff denied that Burnham touched her on any other occasion.

The plaintiff testified that Burnham twice asked her to go to a local bar with him. On the first occasion, the plaintiff asked if Burnham's wife was also going, and he responded that she was not, "That's why I'm asking you." On the second occasion, he said, "If you're going to do something to me we need to go to Pensacola."

The plaintiff testified that, as many as two or three times a week over an extended period, Burnham would come to her office and ask her, "What is it going to take? What do you want? I'm willing to do it." He would then leave her office.

The plaintiff testified that Burnham got angry with her in 2003 when he learned

she had gone to Germany on her scheduled vacation without telling anyone where she was going.

The plaintiff testified that, in 2005, she told Burnham she knew about a woman with dark hair. Burnham became angry and demanded to know who had told the plaintiff about the woman.

The plaintiff testified that no one else was present when Burnham made his various comments to her.

The plaintiff testified that she made no complaint of sexual harassment during the period that Burnham was harassing her. She explained that she was fearful of losing her job if she complained, because Burnham was a member of the city council.

The plaintiff testified that the first time she complained of sexual harassment was in her amended EEOC charge, which she filed in November 2006.

The plaintiff offered no evidence of sexual harassment except her own testimony.

### A.  Limitations Period - Title VII.

"A charge under this section shall be filed within one hundred and eighty days after the alleged unlawful employment practice occurred ...." 42 U.S.C. § 2000e-5(e)(1). "A discriminatory act which is not made the basis for a timely charge is the legal equivalent of a discriminatory act which occurred before the statute was passed. ... [I]t is merely an unfortunate event in history which has no present legal consequences." *United Air Lines, Inc. v. Evans*, 431 U.S. 553, 558 (1977). "Failure to file a timely complaint with the EEOC mandates the dismissal of the Title VII suit." *Wilson v. Bailey*, 934 F.2d 301, 304 n.1 (11th Cir. 1991).

The plaintiff admits that the last incident of sexual harassment occurred in March 2005 and that she first filed a charge concerning sexual harassment in November 2006. The plaintiff's failure to file a timely charge "mandates the dismissal of the Title VII suit."

The plaintiff argues that a sexual harassment claim can encompass acts of harassment that occurred more than 180 days before the filing of the charge. That is true, but only if at least some of the conduct occurred within 180 days of filing. *National Railroad Passenger Corp. v. Morgan*, 536 U.S. 101, 118 (2002) ("In order for the charge to be timely, the employee need only file a charge within 180 ... days of any act that is part of the hostile work environment."). Since the plaintiff did not file her charge within 180 days of the last act that was part of the allegedly hostile work environment, her charge is untimely.

The plaintiff also suggests that the filing period should be equitably tolled because she feared she would lose her job if she complained. The charge-filing period is subject to equitable tolling, but the doctrine is to be applied "sparingly." *Morgan*, 536 U.S. at 113. More specifically, "Plaintiff's fear of retaliation ... is not a ground for equitable tolling." *Carter v. West Publishing Co.*, 232 F.3d 1258, 1266 (11th Cir. 2000).[2]

For the reasons set forth above, the Court rules that the plaintiff's Title VII claim is time-barred as a matter of law and is due to be dismissed.

**B. Limitations Period - Section 1983.**

"[T]he two-year limitations period of Ala. Code § 6-2-38(*l*) applies to section 1983 claims in Alabama." *Baker v. Birmingham Board of Education*, 531 F.3d 1336, 1337 (11th Cir. 2008) (internal quotes omitted) (race discrimination and retaliation in employment); *accord Alexander v. Fulton County*, 207 F.3d 1303, 1346 (11th Cir. 2000)

---

[2]"Otherwise, the doctrine of equitable tolling would effectively vitiate the statutory time requirement because an employee could defer filing indefinitely so long as she had an apprehension about possible retaliation. This court cannot permit such circumvention of Title VII's express filing limitations. ... Therefore, the district court clearly erred in finding a doctrine of equitable tolling applicable to this case." *Id*.

(race discrimination in employment).[3]

For purposes of Section 1983, the limitations period begins to run when the cause of action accrues. *Smith v. McClammy*, 740 F.2d 925, 927 (11th Cir. 1984). A cause of action accrues "when facts supportive of a ... civil rights action are or should be apparent to a reasonably prudent person similarly situated." *Id.* (internal quotes omitted); *accord McNair v. Allen*, 515 F.3d 1168, 1173 (11th Cir. 2008).

The plaintiff admits that she was at all times well aware of Burnham's harassment and that she at all times found it objectionable. Her equal protection cause of action brought under Section 1983 therefore accrued in or before March 2005, the last date of his harassment. This lawsuit was filed in July 2007. (Doc. 1). Assuming without deciding that equitable tolling is permissible as to claims brought under Section 1983, as discussed in Part I.A the plaintiff has shown no basis for equitable tolling.

For the reasons set forth above, the Court rules that the plaintiff's Section 1983 sexual harassment claim is time-barred as a matter of law and is due to be dismissed.

### C. Severe and Pervasive Harassment.

The fourth element of a claim for sexual harassment is that "the harassment was sufficiently severe or pervasive to alter the terms and conditions of employment and create a discriminatorily abusive working environment." *Hulsey v. Pride Restaurants, LLC*, 367 F.3d 1238, 1244 (11th Cir. 2004).[4]

---

[3]A four-year limitations period applies if the Section 1983 action arises under an Act of Congress enacted after December 1, 1990. *Baker*, 531 F.3d at 1337. The plaintiff's Section 1983 claim, however, is based on the Equal Protection Clause and is therefore subject to the two-year limitations period.

[4]"Although the Supreme Court does not regard as identical the constraints of Title VII and the Federal Constitution, ... when Section 1983 is used as a parallel remedy for violation ... of Title VII, the elements of the two causes of action are the same." *Underwood v. Perry County Commission*, 431 F.3d 788, 793 (11th Cir. 2005) (internal quotes and citations omitted). The same prima facie case is also employed. *Richardson*

Not every unpleasantness experienced in the workplace goes into this calculation. Importantly, "the statements and conduct must be of a sexual or gender-related nature ... before they are considered in determining whether the severe or pervasive requirement is met." *Gupta v. Florida Board of Regents*, 212 F.3d 571, 583 (11th Cir. 2000). Thus, "[i]nnocuous statements or conduct, or boorish ones that do not relate to the sex of the actor or of the offended party (the plaintiff), are not counted" in determining the severity and pervasiveness of the harassment. *Id.* It is doubtful that the two incidents when Burnham became angry should be counted under *Gupta*. Even counting them, however, the plaintiff has not shown severe or pervasive harassment.

"[In] [d]etermining whether the harassment was sufficiently severe or pervasive ..., a court looks to all the circumstances, including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *McCann v. Tillman*, 526 F.3d 1370, 1378 (11th Cir. 2008).

**1. Frequency.**

Excluding the "What is it going to take?" comments, the plaintiff identifies only five incidents in a span of almost 3½ years. This ranks very low on the frequency scale. *Compare McCann*, 526 F.3d at 1378-79 (four usages of racial terms in a period of over two years were "too sporadic and isolated" to support a racial harassment claim) *and Mendoza v. Borden, Inc.*, 195 F.3d 1238, 1249 (11th Cir. 1999) (en banc) (five inappropriate instances in eleven months were "far too infrequent" to support a sexual harassment claim) *with Johnson v. Booker T. Washington Broadcasting Service, Inc.*, 234 F.3d 501, 509 (11th Cir. 2000) (fifteen instances in four months "was not infrequent"). However, because the plaintiff testified that Burnham asked her, "What is it going to take?" and "What do you want?" two or three times a week for several years, the

---

*v. Leeds Police Department*, 71 F.3d 801, 805 (11th Cir. 1995).

frequency of those comments supports her claim.  However, "[e]ven to the extent that [the harasser's] conduct was frequent, this does not compensate for the absence of the other factors."  *Corbitt v. Home Depot U.S.A., Inc.*, 573 F.3d 1223, 1241 (11th Cir. 2009) (internal quotes omitted).

### 2.  Severity.

As a matter of law, kissing the plaintiff on the cheek, asking her to a bar, and becoming angry is not severe conduct.  *See Corbitt*, 573 F.3d at 1241 (putting a hand on the plaintiff's inner thigh is not severe); *Gupta*, 212 F.3d at 578, 585 (persistently asking a subordinate to lunch is not severe); *id.* at 584 ("[F]lirtation is not sexual harassment.").

Viewed in the light most favorable to the plaintiff, Burnham's repeated inquiries as to "What is it going to take?" and "What do you want?" could be construed as requests for sexual favors.  But if so, they were veiled and mild, and Burnham never demanded anything but simply asked the question and then left.  *See Nurse "BE" v. Columbia Palms West Hospital Limited Partnership*, 490 F.3d 1302, 1310 (11th Cir. 2007) (a "persistent but non-threatening suitor ... does not amount to harassment").

### 3.  Physically threatening or humiliating.

Although the plaintiff testified that she began keeping a desk between her and Burnham, his words and conduct were not physically threatening.  Nor were they humiliating.  *See Gupta*, 212 F.3d at 578, 585 (frequently asking a subordinate to lunch was not threatening or humiliating); *Webb-Edwards v. Orange County Sheriff's Office*, 525 F.3d 1013, 1027 (11th Cir. 2008) (telling the plaintiff she looked hot and should wear tighter clothing was not humiliating); *Mendoza*, 195 F.3d at 1248-49 (constantly following the plaintiff around was not humiliating); *Lockett v. Choice Hotels International, Inc.*, 315 Fed. Appx. 862, 863, 866 (11th Cir. 2009) (offering to lick the plaintiff's genitals and touching her on her bottom were not sufficiently humiliating to

support a sexual harassment claim).

### 4. Interference with work performance.

Whether a harasser's conduct unreasonably interferes with a plaintiff's job performance involves both an objective and a subjective inquiry. *Gupta*, 212 F.3d at 586. The failure to present evidence that the harasser's conduct in fact interfered with the plaintiff's job performance requires that the subjective portion of this inquiry weigh against the plaintiff. *Mendoza*, 195 F.3d at 1248. The plaintiff presented no such evidence, so she cannot satisfy the subjective prong. Moreover, as in *Gupta*, "the conduct and statements in question would not have interfered with a reasonable employee's performance of her job." 212 F.3d at 586.

### 5. Totality of the circumstances.

Burnham frequently asked the plaintiff what she wanted and/or what it would take, but these comments were mild, were not humiliating or physically threatening, did not interfere with her job performance, and would not have interfered with a reasonable employee's job performance. The other conduct and comments of which the plaintiff complains were not frequent, even in combination, and were likewise mild, not humiliating and not physically threatening, and likewise did not interfere with the plaintiff's job performance and would not have interfered with a reasonable employee's job performance. As a matter of law, the plaintiff does not have a legally sufficient evidentiary basis for a properly functioning jury to find in her favor on the fourth element of her sexual harassment claims. Thus, both her Title VII sexual harassment claim and her Section 1983 sexual harassment claim are due to be dismissed.

## II. Due Process.

By previous Court order, and in accordance with the parties' joint pretrial

document, this claim was "limited to the defendants' actions in terminating the Plaintiff," brought as a procedural (not substantive) due process claim.  (Doc. 143 at 2).

"To establish such a claim [for violation of a right to procedural due process], the former clerk must show that she had a protected property interest in her employment." *Epps v. Watson*, 492 F.3d 1240, 1246 (11th Cir. 2007).  "State law determines whether a public employee has a property interest in his or her job." *Id*. (internal quotes omitted).  "For purposes of establishing a property right in continued employment under Alabama law, the crucial question is whether the employment is terminable by the employer 'at will' or whether the employer's discretion to discharge the employee is somehow fettered."  *Green v. City of Hamilton Housing Authority*, 937 F.2d 1561, 1564 (11th Cir. 1991).

"As a general rule in Alabama, an employment contract for an indefinite period is terminable at will by either party, with or without cause or justification."  *Webb Wheel Products, Inc. v. Hanvey*, 922 So. 2d 865, 870 (Ala. 2005).  However, "[i]t is well settled that ... the employment-at-will relationship can be modified by provisions in an employee handbook by which an employer promises not to discharge an employee except by specified procedures or for specified causes."  *Campisi v. Scoles Cadillac, Inc*., 611 So. 2d 296, 298 (Ala. 1992).  The plaintiff argues that the City's employee handbook, by detailing procedures to be followed before terminating a City worker, created such a promise and thereby provided her a property interest in her employment.

Had the handbook truly promised that the plaintiff would not be fired except in compliance with the procedures set forth therein, she presumably would have a property interest in her employment.  However, "to become a binding promise, the language used in the handbook must be specific enough to constitute an actual offer rather than a mere general statement of policy ....  Indeed, if the employer does not wish the policies contained in an employee handbook to be construed as an offer for a unilateral contract, he is free to so state in the handbook."  *Campisi*, 611 So. 2d at 298 (internal quotes

omitted).

The City's employee handbook explicitly states as follows:

> All city personnel policies and procedures, whether explicit or implicit, are intended to be guidelines. They are not a contract between the City and its employees and shall not be viewed as such.

(Defendants' Exhibit 23 at 4). This language prevents the handbook from supporting a contract of employment other than for at-will employment. *E.g., Hoffman-La Roche, Inc. v. Campbell*, 512 So. 2d 725, 734 (Ala. 1987) (handbook which provided that "[t]his Handbook and the policies contained herein do not in any way constitute, and should not be construed as a contract of employment between the employer and the employee, or a promise of employment," could not alter the at-will relationship); *Stokes v. Amoco Fabrics and Fibers Co.*, 729 So. 2d 330, 335 (Ala. Civ. App. 1997) ("Our Supreme Court has recognized that some company documents contain general guidelines to be used in the discharge of employees but that those guidelines are not to be construed as contractual limitations on the employer's procedures," citing *Campisi*).

As a matter of law, the plaintiff does not have a legally sufficient evidentiary basis for a properly functioning jury to find that she had a protected property interest in her employment. Thus, her procedural due process claim is due to be dismissed.

## III. First Amendment.

By previous Court order, and in accordance with the parties' joint pretrial document, this claim was "limited to the Defendants' decision to terminate the plaintiff." (Doc. 143 at 2).

"The law is well established that a state employee may not be discharged in retaliation for speech protected under the First Amendment." *Vila v. Padron*, 484 F.3d 1334, 1339 (11th Cir. 2007) (internal quotes omitted). "To set forth a claim of retaliation, a public employee must show: (1) she was speaking as a citizen on a matter of public concern ...." *Id*. This is a question of law which the Court must decide. *Id*.

"When a public employee speaks as an employee on matters of personal interest and not as a citizen on matters of public concern, the First Amendment is not implicated." *Vila*, 484 F.3d at 1339.  To make this determination, "[w]e ask whether the 'main thrust' of the speech in question is essentially public in nature or private, whether the speech was communicated to the public at large or privately to an individual, and what the speaker's motivation in speaking was."  *Id*. at 1340 (internal quotes omitted).

The speech that set in motion the plaintiff's termination by the mayor (before her reinstatement by the city council) was her telephone call to councilwoman Regina Landry. The plaintiff testified as follows:

- She called Landry "to complain about my working conditions and mistreatment in my department."
- She told Landry "that I had recently gotten an evaluation that was lower, although my productivity was higher.  We moved on to I told her about some of the mistreatment that I had endured and that I had complained to HR and I had complained to the director.  I also complained to a number of council members, but nothing had happened."
- She told Landry "that I was calling her so that she could tell my story.  And I wanted her to be an advocate for me and to tell what happened to me."
- She talked to Landry "about how they [her supervisor and co-workers] worked in concert to sabotage my work, to take files from my office."
- She told Landry "that I was a protected member of society, and that I was asking for her help.  I hadn't been able to get any help prior to coming to her.  And that they had a responsibility to protect me.  And I said, well, nobody has helped me.  If you are not going to help me, at least help the coworkers, protect them from themselves."
- She told Landry that the others in the department were "ganging up on

    [her]."

- She told Landry that Burnham has "been pursuing me."
- She testified that her "intention was to get [Landry] to go into that department and investigate what I had been complaining about."

  The plaintiff also testified that she told Landry she had just purchased life insurance; that the pressure on her was too great; that she couldn't handle the pressure; that it was like a dog beaten too much and then drenched in boiling water; that you see it all the time, an employee shooting co-workers when something small is allowed to escalate; that she did not want to kill anybody; and that if a workplace shooting occurred in the City, Landry would have to explain why she didn't do anything when the employee came to her for help.

  It is obvious from this summary that the main thrust of the plaintiff's speech was to talk about her own personal problems in the workplace, not about some public issue. She addressed only her own situation,[5] and she was so upset about it that she made comments suggesting suicidal or homicidal inclinations. It is equally obvious that the plaintiff was motivated by a desire to improve her own work situation, not to air or resolve a public matter, since she admitted her purpose in speaking was to enlist Landry as her champion. As in other cases, "[t]he record shows that [the plaintiff's] speech was driven by her own entirely rational self-interest in improving the conditions of her employment." *Morgan v. Ford*, 6 F.3d 750, 755 (11th Cir. 1993). Finally, while Landry was a public official, the plaintiff spoke to her privately rather than at a city council meeting or other public gathering. *See Maggio v. Sipple*, 211 F.3d 1346, 1352 (11th Cir. 2000) (relating concerns to an official administrative body is "not to the public").

  The plaintiff argues that what happened to her was not just a personal problem but

---

[5]Even when she mentioned help for her co-workers by "protect[ing] them from themselves," it was a means of getting help for herself.

reflected a City-wide problem. There is no evidence of such a widespread problem.[6] At any rate, and as reflected above, her testimony as to what she told Landry was limited to complaints about her own situation, not that of others. Even if there were evidence of a City-wide problem, the mere fact that the plaintiff's situation may not have been unique does not elevate her personal employment complaints to ones of public concern.

In a related vein, the plaintiff argues that mistreatment of minorities and other protected persons (the plaintiff is a black female) is a matter of public concern. However, "[w]hile ... sexual harassment in the workplace is a matter of important social interest, the mere fact that the topic of the employee's speech was one in which the public might or would have had a great interest is of little moment." *Morgan v. Ford*, 6 F.3d 750, 754 (11th Cir. 1993); *cf. Boyce v. Andrew*, 510 F.3d 1333, 1344 (11th Cir. 2007) ("A public employee may not transform a personal grievance into a matter of public concern by invoking a supposed popular interest in the way public institutions are run.").

Even were there some tinge of public concern to the plaintiff's speech, "[a]n employee's speech will rarely be entirely private or entirely public," and the question is whether the employee spoke "primarily" as an employee or as a citizen. *Morgan*, 6 F.3d at 755. Based on the plaintiff's own testimony, it is crystal clear that she spoke primarily, if not exclusively, as an employee and not as a citizen.

Finally, the plaintiff argues that her protected speech includes not only her conversation with Landry but also conversations with her supervisor, human resources manager Sharon Cureton, Mayor Small, and city council member Bailey Yelding. The plaintiff testified to no speech to her supervisor. The only evidence of speech to Mayor Small is that, a year or so before her termination, she told him she was "not happy" with her supervisor and some of her co-workers. The only evidence of speech to Cureton is that, before the plaintiff went to Landry, she "pleaded with [Cureton] to help me," and

---

[6]On the contrary, the plaintiff testified that she addressed only her department, which consisted of her and the three employees of whom she was complaining.

that, when Cureton told her to report to Mayor Small after her call to Landry, she told Cureton she was trying to get a lawyer and that she had been advised not to meet with the City.  The only evidence of speech to Yelding is that, just before she called Landry, she told Yelding "how badly I had been treated and management would not correct the problems and they wouldn't help me and that I didn't want to but I was going to have to file an EEOC complaint."  For reasons already discussed, this speech is no more by a citizen on a matter of public concern than is the plaintiff's speech to Landry.

For the reasons set forth above, the Court concludes that the plaintiff spoke as an employee on a matter of private concern and not as a citizen on a matter of public concern.  Thus, her First Amendment claim is due to be dismissed.

## CONCLUSION

For the reasons set forth above and in open court on November 20, the defendants' motion for judgment as a matter of law is **granted**.  The plaintiffs' claims are **dismissed with prejudice**.  Judgment will be entered accordingly by separate order.

DONE and ORDERED this 25th day of November, 2009.

> s/ WILLIAM H. STEELE
> UNITED STATES DISTRICT JUDGE